# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HERBASWAY LABORATORIES, LLC )
)
　　　　　　　　　　　Plaintiff, )　　CIVIL ACTION NO.
) 　　3:02-CV-1382(AHN)
)
)
)
HEBA LABORATORIES LLC, )
HERBAMEDICINE, LLC, )
HERBASCIENCE AND )
TECHNOLOGIES, LLC, )
)
　　　　　　　　　　Defendants. )　　JANUARY 12, 2007

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

John R. Horvack, Jr. (ct12926)
Fatima Lahnin (ct24096)
CARMODY & TORRANCE LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
Phone: 203 573-1200
Fax: 203 575-2600

On behalf of:
HerbaSway Laboratories, LLC

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  FACTS THAT PRECLUDE SUMMARY JUDGMENT ....................................... 2

III. ARGUMENT……………… ......................................................................... 4

    A.   Legal Standard for Summary Judgment ...................................................... 4

    B.   Defendants' Use of HerbaSway's Trademarks and Trade Names
        in Its Website's Metatags and in Keyword Advertising Constitutes
        Trademark Infringement ............................................................................ 5

        1.   Heba used HerbaSway's Trademark "in Commerce".................... 5

        2.   Heba's use of HerbaSway's Trademark constitutes initial
             interest confusion ......................................................................... 10

    C.   A Substantial Likelihood of Confusion Exists Between
        HerbaSway's Registered Trademark "Herbagreen" and Heba's
        Use of "Hebagreen." ................................................................................ 11

        1.   A proper analysis of likelihood of confusion calls for the
             comparison of the marks "Herbagreen" and "Hebagreen,"
             not "Herba" and "Heba".............................................................. 12

        2.   There is a substantial likelihood of confusion between the
             "Herbagreen" and "Hebagreen" marks ....................................... 16

    D.   HerbaSway has a Protectible Trade Dress that has been Copied
        by Heba .................................................................................................... 20

        1.   HerbaSway has adequately defined its trade dress ...................... 20

        2.   HerbaSway's trade dress is inherently distinctive ........................ 23

             a.   Distinctiveness of HerbaSway's Trade Dress ...................... 23

             b.   Likelihood of Confusion ..................................................... 27

CARMODY & TORRANCE LLP    50 Leavenworth Street    i
{W1482691} Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

        (1)     Strength of the Trade Dress ......................................27

        (2)     Similarity of the Trade Dresses and Products' Proximity................................................................27

        (3)     Competitive Proximity of the Two Products and Likelihood Senior User Will Bridge the Gap .............28

        (4)     Junior User's Bad Faith............................................ 28

        (5)     Evidence of Actual Confusion.....................................29

        (6)     Quality of Junior User's Product ...................................29

        (7)     Sophistication of Consumer ..........................................30

        (8)     Summary of Polaroid Factors.......................................30

E.     An Issue of Fact Exists as to Whether the Copyright Registration of HerbaSway's Educational Brochure, Registered in HerbaSway's Name, is the Property of HerbaSway ............................................................ 30

     1.    Heba's argument regarding the question of copyright infringement is completely without merit and is entitled to little weight ..................................................................... 30

     2.    HerbaSway, as Dr. Zhou's employer, is the rightful owner of the rights to the copyright on HerbaSway's educational brochure. ............... 33

IV.    CONCLUSION .................................................................... 38

CARMODY & TORRANCE LLP   50 Leavenworth Street   ii
{W1482671} Attorneys at Law    Post Office Box 1110
                                       Waterbury, CT 06721-1110
                                       Telephone: 203 573-1200

# TABLE OF AUTHORITIES

**Cases**

1-800 Contacts, Inc. v. WhenU.com, Inc.,
    414 F.3d 400 (2d Cir. 2005)............................................................................. 6, 7

Abercrombie & Fitch Co. v. Hunting World, Inc.,
    537 F.2d 4 (2d Cir.1976)...................................................................................... 24

Am. Cyanamid Corp. v. Connaught Labs., Inc.,
    800 F.2d 306 (2d Cir. 1986)........................................................................... 13, 14

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)............................................................................................ .4

Aymes v. Bonelli,
    980 F.2d 857 (2d Cir. 1992).............................................................................. 35

Banff, Ltd. v. Federated Dept. Stores, Inc.,
    841 F.2d 486 (2d Cir. 1988) .................................................................... 14, 15, 29

Basch v. Blue Coral, Inc.,
    968 F.2d 1532 (2d Cir. 1992) ..............................................................................25

Beech-Nut, Inc. v. Warner-Lambert Co.,
    346 F.Supp. 547 (S.D.N.Y. 1972) ......................................................................14

Brookfield Communications v. West Coast Entertainment Corp.,
    174 F.3d 1036 (9th Cir. 1999).................................................................... 10, 11

Buying for the Home, LLC v. Humble Abode, LLC,
    2006 WL 3000459 (D.N.J. Oct. 20, 2006)......................................................... 8, 9

Carter v. Helmsley-Spear, Inc.,
    861 F.Supp. 303 (S.D.N.Y. 1994)...................................................................... 34

Carter v. Helmsley-Spear, Inc.,
    71 F.3d 77 (2d Cir. 1995).............................................................................. 35, 37

Centaur Communications Ltd. v. A/S/M Communications, Inc.,
    830 F.2d 1217 (2d Cir. 1987) ..............................................................................30

{W...} CARMODY & TORRANCE LLP    50 Leavenworth Street   **iii**
Attorneys At Law    Post Office Box 1110
   Waterbury, CT 06721-1110
   Telephone: 203 573-1200

Community for Creative Non-Violence v. Reid,
   490 U.S. 730 (1989) ............................................................................ 35

Cullman Ventures, Inc. v. Columbian Art Works, Inc.,
   717 F.Supp. 96 (S.D.N.Y. 1989) ....................................................... 17

Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,
   604 F.2d 200 (2d Cir. 1979) ............................................................... 19

Edina Realty, Inc. v. The MLSonline.com,
   2006 WL 737064 (D. Minn. Mar. 20, 2005) ........................................ 8

Forschner Group, Inc. v. Arrow Trading Co., Inc.,
   124 F.3d 402 (2d Cir. 1997) ............................................................... 20

Fun-Damental Too Ltd. v. Gemmy Indus. Corp.,
   111 F.3d 993 (2d Cir. 1997) ..................................................... 22, 23, 24

Gurner + Jahr USA Publishing v. Meredith Corp.,
   991 F.2d 1072 (2d Cir. 1993) ............................................................. 19

Hasbro, Inc. v. Lanard Toys, Ltd.,
   858 F.2d 70 (2d Cir. 1988) ................................................................. 30

Holt v. KMI Continental, Inc.,
   95 F.3d 123 (2d Cir. 1996) ................................................................... 4

In re Majestic Distilling Co., Inc.,
   315 F.3d 1311 (Fed. Cir. 2003) .......................................................... 18

Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,
   58 F.3d 27 (2d Cir. 1995) ................................................................... 21

Kerzer v. Kingly Mfg.,
   156 F.3d 396 (2d Cir. 1998) ................................................................. 4

La Cena Fine Foods, Ltd. v. Jennifer Fine Foods,
   No. 01-CV-5746 (JLL), 2006 WL 2014503, *7 (D. N.J. July 17, 2006) ............ 11

Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,
   15 F.Supp.2d 389 (S.D.N.Y. 1998) ..................................................... 15

Langman Fabrics, Inc. v. Graff Californiawear, Inc.,
    160 F.3d 106 (2d Cir. 1998)............................................................................ 33, 34

LeSportsac, Inc. v. K Mart Corp.,
    754 F.2d 71 (2d Cir. 1985)................................................................................. 21

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
    454 F.3d 108 (2d Cir. 2006).................................................................... 11, 16, 17

Macia, III v. Microsoft Corp.,
    335 F.Supp.2d 507(D.Vt. 2004)......................................................................... 13

Martha Graham School & Dance Foundation, Inc. v.
Martha Graham Ctr. of Contemporary Dance, Inc.,
    380 F.3d 624 (2d Cir. 2004) ........................................................................ 36, 37

Merck & Co., Inc. v. Mediplan Health Consultation, Inc.,
    425 F.Supp.2d 402 (S.D.N.Y. 2006).................................................................. 6, 8

Mobil Oil Corp. v. Pegasus Petroleum Corp.,
    818 F.2d 254 (2d Cir. 1987)........................................................................... 18, 20

Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,
    182 F.3d 133 (2d Cir. 1999)....................................................................... 18, 19, 29

Nabisco v. Warner-Lambert Co.,
    32 F.Supp.2d 690 (S.D.N.Y. 1999)................................................................ 15, 19

Packard Press, Inc. v. Hewlett-Packard Co.,
    227 F.3d 1352 (Fed. Cir. 2000).......................................................................... 12

Paddington Corp. v. Attiki Importers & Distributors, Inc.,
    996 F.2d 577 (2d Cir. 1993).................................................................... 23, 27, 28

Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.,
    486 F.Supp. 414 (S.D.N.Y. 1980)...................................................................... 18

Playtex Products, Inc. v. Georgia-Pacific Corp.,
    390 F.3d 158 (2d Cir. 2004)............................................................................... 15

CARMODY & TORRANCE LLP    50 Leavenworth Street    v
{W1482631}Attorneys at Law    Post Office Box 1110
    Waterbury, CT 06721-1110
    Telephone: 203 573-1200

Polaroid Corp. v. Polaroid Electronics Corp.,
    287 F.2d 492 (2d Cir. 1961)................................................................. 16

Smithkline Beckman Corp. v. Proctor & Gamble Co.,
    591 F.Supp. 1229 (N.D.N.Y. 1984) ............................................... 13, 14

Sports Auth., Inc. v. Prime Hospitality Corp.,
    89 F.3d 955 (2d Cir. 1996)........................................................... 18, 19

Streetwise Maps, Inc. v. VanDam, Inc.,
    159 F.3d 739 (2d Cir. 1998)................................................................. 17

Thompson Medical Co., Inc. v. Pfizer, Inc.,
    753 F.2d 208 (2d Cir. 1985) ............................................................... 26

Tough Traveler, Ltd. v. Outbound Prod,
    60 F.3d 964 (2d Cir. 1995)................................................................. 21

Two Pesos, Inc. v. Taco Cabana, Inc.,
    505 U.S. 763 (1992)........................................................................... 24

V&S Vin & Spirit Aktiebolag (Publ) v. Absolute Pub. USA Inc.,
    2005 WL 3272828, *7 -8 (S.D.N.Y. Nov. 28, 2005)............................ 19

World Carpets, Inc. v. Dick Littrell's New World Carpets,
    438 F.2d 482 (5th Cir. 1971)............................................................... 18

W.W.W. Pharm. Co. v. Gillette Co.,
    984 F.2d 567 (2d Cir. 1993)............................................................... 13

Yurman Design, Inc. v. PAJ, Inc.,
    262 F.3d 101 (2d Cir. 2001) ............................................................... 22

CARMODY & TORRANCE LLP    50 Leavenworth Street  vi
{W1482673} at Law    Post Office Box 1110
    Waterbury, CT 06721-1110
    Telephone: 203 573-1200

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................................ 1

15 U.S.C. § 1115(b) (1994) ....................................................................................... 12

15 U.S.C. § 1125(a)(1)(A) ........................................................................................ 20

J. Thomas Mccarthy, Mccarthy On Trademarks And Unfair Competition,
    (4th Ed. 2006) .................................................................................. 12, 13, 18, 21

## I.    **INTRODUCTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Plaintiff, HerbaSway Laboratories, LLC (hereinafter "HerbaSway"), respectfully submits this memorandum of law in opposition to Defendants' Motion for Summary Judgment.[1] The Motion submitted by Defendants, Heba Laboratories LLC, Herbamedicine LLC, Herbascience and Technologies LLC, (hereinafter collectively "Heba"), fails as a matter of law. Not only has Heba failed to set forth undisputed facts to support its Motion, but the truly undisputed facts, as outlined in HerbaSway's Statement of Disputed Issues of Material Fact, establish that as a result of Heba's campaign to "destroy" HerbaSway by infringing on its trademarks, trade dress and copyrights, HerbaSway is entitled to the relief it requests.

While HerbaSway believes the complete set of facts presented in this opposition demonstrate that HerbaSway is entitled to the relief it seeks, the complete facts, when take in the light most favorable to HerbaSway, at the very least, establish genuine issues of material fact that compel a denial of Heba's Motion. For these reasons and for reasons more fully set forth below, this Court should deny Heba's Motion for Summary Judgment.

---

[1] In support of this opposition, HerbaSway submits the accompanying Local Rule 56(a)(2) Statement and supporting exhibits.

## II.    FACTS THAT PRECLUDE SUMMARY JUDGMENT

As outlined in HerbaSway's Statement of Disputed Issues of Material Fact and the Declaration of Franklin St. John (See Exh. 1), HerbaSway Laboratories, LLC ("HerbaSway") was formed in 1996, with three members: Franklin St. John, Lorraine St. John, and James Zhou ("Zhou"). These three individuals remain the only members of HerbaSway.

Zhou was also an employee of HerbaSway, holding the title of V.P. of Marketing and R&D. His duties included the development of herbal products. Zhou developed a line of liquid concentrated herbal products designed to enhance overall health or to address a particular ailment. A second written agreement governed the terms of Zhou's employment. Under this agreement, Zhou was obligated to devote his full time and energy to HerbaSway's business and was prohibited from competing with HerbaSway.

On January 30, 2001, Zhou opened a bank account at Fleet Bank in the name of HerbaSway. Although Zhou had _no_ responsibility for managing HerbaSway's financial affairs or banking relationships, Zhou made himself the sole signatory on the account, and kept the existence of the account _secret_ from the St. Johns and HerbaSway's accountants. That same day, Zhou instructed Celestial Seasonings, a large HerbaSway customer, to disregard its normal payment procedure and wire transfer $147,510 into his secret account.

After HerbaSway learned of the existence of Zhou's secret account, HerbaSway's attorney requested an explanation from Zhou. Zhou stated that he had opened the account because he was concerned about HerbaSway making late payments to its Chinese supplier, Zhou's brother. Zhou's explanation rang false. First, Zhou admitted that when he had opened the account, there were only *two* outstanding invoices for shipments and *neither payment was overdue*. Second, the two outstanding invoices totaled only $51,561, an amount far less than the $147,510 that Zhou diverted to his secret account. Third, HerbaSway had a record of timely payment for shipments. In fact, in the six weeks preceding Zhou's diversion of funds, HerbaSway had made four wire transfers to Zhou's brother totaling approximately $133,000. Fourth, Zhou admitted that he had never been told that his brother would not get paid. Thus, Zhou's alleged basis for the diversion of $147,510 was unsubstantiated. Consequently, HerbaSway terminated Zhou's employment on February 1, 2001, for attempting to steal corporate funds.

When Zhou returned to HerbaSway the next day to pick up his personal belongings, he vowed to destroy HerbaSway, which he coupled with a throat-slashing gesture. This was witnessed by two HerbaSway employees.

On April 30, 2001, Zhou formed two competing companies, Herbamedicine, LLC and Herbascience and Technologies, LLC ("Herbascience"). Heba Laboratories, LLC ("Heba"), a third competing business, was formed on June 1, 2001, with Herbascience as its 70 percent member.

Heba directly competes with HerbaSway by marketing and selling a line of herbal medicinal products that is virtually identical to HerbaSway's line of herbal medicinal products. Specifically, in an effort to steal customers from HerbaSway, Heba misappropriated HerbaSway's trademarks, trade dress, product formulations, manufacturing processes, customer lists, and marketing materials. As detailed below, these facts preclude issuance of summary judgment for Heba.

## III.    **ARGUMENT**

### A.    **Legal Standard for Summary Judgment.**

Under Fed. R. Civ. P. 56(c), a grant of summary judgment is only appropriate when there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The burden of demonstrating that (i) no genuine issue of fact exists and (ii) one is entitled to judgment as a matter of law is on the moving party. Where a genuine issue of material fact exists, summary judgment must be denied. Id. at 247. Disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment. Id. at 248. The Court must resolve all ambiguities and draw all inferences in the light most favorable to the party opposing a motion for summary judgment. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). If there is evidence as to any material fact from which an inference could be drawn in favor of the party opposing summary judgment, the court should deny the motion. Holt v. KMI Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996).

**B.**    **Defendants' Use of HerbaSway's Trademarks and Trade Names in Its Website's Metatags and in Keyword Advertising Constitutes Trademark Infringement.**

1.    Heba used HerbaSway's Trademark "in Commerce".

Heba argues that its commercial use of HerbaSway's trademarks to advertise and market its competitive goods is not a "trademark use" because the use of the marks was "internal." (Defendants' Motion at 9). Heba essentially claims that because the use of any marks was not to the public, HerbaSway's claims of infringement are not valid. Heba's argument not only misses the point but also ignores the facts of this case which strongly undercut Heba's hyper-technical argument.

As alleged in HerbaSway's Amended Complaint, Heba has traded on HerbaSway's goodwill through Heba's efforts to promote its Internet website by diverting traffic from HerbaSway's website in at least two ways. First, Heba used HerbaSway's federally registered trademarks in the meta tags of its website in order to improve Heba's position in the search results if HerbaSway's trademarks are entered as the search terms in various Internet search engines.[2] (See Exhs. 15 and 16). Second, Heba bid on HerbaSway's trademarks as "Keywords" to give Heba preferred placement in Internet search engine results. See id.

---

[2] "Meta tags" are a part of the HTML source code which contains keywords that are used to describe the contents of a web page. There are three kinds of meta tags: descriptive meta tags, keywords and robot tags, all of which are selected and controlled by the author of the document. Descriptive meta tags describe the content of the document. Keyword meta tags are used by Internet search engines to help determine whether a particular website page is relevant to a search term that has been entered by a search engine user. Robot meta tags indicate to search engines that certain website pages are not to be indexed by the search engine, and should therefore not be retrievable in search engine results.

Through its use of HerbaSway's trademarks in its website's meta tags and by bidding on HerbaSway's trademarks, Heba seeks to ensure that a link to its website is displayed at the top or near the top of a results list when a search engine user, perhaps as a result of interest piqued by HerbaSway's extensive advertising, searches for HerbaSway's trademarks. As a result, Heba trades on HerbaSway's goodwill, causes consumer confusion and redirects users away from HerbaSway's website to Heba's website. There is nothing subtle or "invisible" about Heba's infringement.

Ignoring these facts, Heba primarily relies on <u>Merck & Co., Inc. v. Mediplan Health Consultation, Inc.</u>, 425 F.Supp.2d 402 (S.D.N.Y. 2006), and asserts that Second Circuit case law is clear that the internal use of a plaintiff's trademarks as a keyword to trigger the display of a link to a defendant's website is not a use of the mark in a "trademark sense." (Defendants' Motion at 10). This argument fails for several reasons.

First, the only Second Circuit decision cited by Heba for the proposition that its use of HerbaSway's trademarks in its websites metatags and in keyword search engine advertising is not trademark infringement is <u>1-800 Contacts, Inc. v. WhenU.com, Inc.</u>, 414 F.3d 400 (2d Cir. 2005). Heba, however, ignores the Second Circuit's reasoning and blurs distinct concepts between pop-up advertisements and activities intended to mislead internet searcher's from competitor's websites.

In <u>1-800 Contacts</u>, the challenged use was the defendant's internet "pop-up" advertisements that appeared when an internet user was already at the plaintiff's website and/or on any other sites dealing with contacts or eye care – i.e., not (as here) a use

designed to derail web searches away from the mark holder's site from the outset. Id. at 410.

In reaching its conclusion that WhenU's inclusion of 1-800-Contacts' Internet website address in its keyword database did not constitute trademark "use," the Second Circuit explicitly distinguished the use of keyword advertising on Internet search engines from pop-up ad activities at issue in that case:

> In addition, unlike several other internet advertising companies, WhenU does not "sell" keyword trademarks to its customers or otherwise manipulate which category-related advertisement will pop up in response to any particular terms on the internal directory. See e.g., Geico, 330 F.Supp. 2d at 703-04 (finding that Google's sale to advertisers of right to use specific trademarks as "keywords" to trigger their ads constituted "use in commerce"). In other words, WhenU does not link trademarks to any particular competitor's ads, and a customer cannot pay to have its pop-up ad appear on any specific website or in connection with any particular trademark.

1-800 Contacts, Inc., 414 F.3d at 411-412. Thus, the Second Circuit explicitly distinguished the precise activities engaged in by Heba in this case from its conclusion that pop-up ad activities are not a use in commerce, and effectively acknowledged that the use of metatags and keyword advertising to cause initial interest confusion is a prohibited "use" under the Lanham Act. 1-800 Contacts, Inc., 414 F.3d at 411. Consequently, Heba's use of HerbaSway's trademarks to divert internet searches from HerbaSway to Heba is clearly a prohibited use of the mark.

Second, Heba's reliance on the Southern New York District Court's decisions in Merck I and II is misplaced as those decisions are not binding on this Court and are readily distinguishable from the facts in this case. Significantly, while the court in

<u>Merck</u> did hold that the use of a competitor's mark in keyword advertising is not a use in commerce, in reaching that conclusion, the court specifically noted that "it is significant that defendants actually sell Zocor (manufactured by Merck's Canadian affiliates) on their websites. Under these circumstances, there is nothing improper with defendants' purchase of sponsored links to their websites from searches of the keyword 'Zocor.'" <u>Merck & Co., Inc.</u>, 425 F.Supp.2d at 416. Here, by contrast, Heba did not sell HerbaSway's products on its website; it sold its own competitive products baring a confusingly similar trade dress and confusing similar product names.

In addition, Heba ignores other cases that squarely hold that a defendant's use of a plaintiff's mark to trigger links to the defendant's website constitutes a "use in commerce" under the Lanham Act. <u>See</u> <u>Edina Realty, Inc. v. The MLSonline.com</u>, 2006 WL 737064 (D. Minn. Mar. 20, 2005); <u>see also</u>, <u>Buying for the Home, LLC v. Humble Abode, LLC</u>, 2006 WL 3000459 (D.N.J. Oct. 20, 2006).

Specifically, in <u>Edina Realty, Inc.</u> the court held:

> While not a conventional "use in commerce," defendant nevertheless uses the Edina Realty mark commercially. Defendant purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement. <u>See</u> <u>Brookfield Comuns., Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1064 (9th Cir. 1999)(finding Internet metatags to be a use in commerce). Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce.

<u>Edina Realty, Inc.</u>, 2006 WL 3000459 at *3.

Similarly, in <u>Buying for the Home, LLC</u>, the Court held that the defendant misappropriated plaintiff by causing an advertisement and a link for defendant's website to appear in search engine results. Specifically, the Court stated:

> First, the alleged purchase of the keyword was a commercial transaction that occurred "in commerce," trading on the value of Plaintiff's mark. Second, Defendant's alleged use was both "in commerce" and "in connection with any goods or services" in that Plaintiff's mark was allegedly used to trigger commercial advertising which included a link to Defendant's furniture retailing website. **Therefore, not only was the alleged use of Plaintiff's mark tied to the promotion of Defendant's goods and retail services, but the mark was used to provide a computer user with direct access (*i.e.*, a link) to Defendant's website through which the user could make furniture purchases. The court finds that these allegations clearly satisfy the Lanham Act's use requirement.**

<u>Buying for the Home, LLC</u>, 2006 WL 3000459 at 8.

These decisions are more consistent with trademark law than the <u>Merck</u> cases. One of the main goals of trademark law is, and always has been, to ensure that trademark owners maintain the ability to benefit from the goodwill associated with their own marks, and to prevent others from diverting that benefit to themselves through confusing consumers into believing, even initially, that the trademark owner is related to, approves of or "sponsors" the infringer's goods. Heba's arguments ignore both the reality of its purposeful conduct, its active campaign to "destroy" HerbaSway, and the wave of decisions which have applied trademark law to the use of trademarks on the Internet. Heba's argument that there is simply no set of facts under which HerbaSway could prevail on its claims even though it has appropriated HerbaSway's federally

registered trademarks for its own insatiate commercial gain, fails as a matter of law and fact.

    2.    <u>Heba's use of HerbaSway's Trademark constitutes initial interest confusion.</u>

It is clear that Heba intentionally worked to create the "initial interest confusion" barred under the Lanham Act as part of its overall scheme to unfairly compete with HerbaSway. It is not necessary for HerbaSway to show that Internet users actually transact business with third party advertisers, or that they actually believe such advertisers are related to HerbaSway, only that they were misdirected to such advertiser's websites through at least "initial interest confusion." See <u>Brookfield Communications v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1061 (9th Cir. 1999). The <u>Brookfield Communications</u> decision is particularly applicable to the facts at hand, especially in view of Heba's central argument that "internal" use of another's trademarks is not a "use" "in Commerce."

The defendant in <u>Brookfield Communications</u> used the trademark "moviebuff" in hidden code on its website, so as to cause Internet search engines to list the website as a search result when "moviebuff" was searched. This hidden code was invisible to the Internet user. The Court recognized that it would be unlikely that an Internet user would be so confused as to believe that the infringer's website was actually that of the trademark owner. Nevertheless, the Court held that the use of the trademark in hidden code, causing the infringer's website to be listed on the search results (even along with the trademark owner's website) caused at least initial interest confusion "in the sense

that ... West Coast improperly benefits from the goodwill that Brookfield developed in its mark." Id. at 1062.

In the present case, Heba used HerbaSway's trademarks to purposefully divert Internet users to its website. Thus, Heba's actions clearly support a finding that it intentionally infringed on HerbaSway's trademarks to get a "free ride" on HerbaSway's name and goodwill. As a result, Heba's Motion for Summary Judgment should be denied.

### C.     A Substantial Likelihood of Confusion Exists Between HerbaSway's Registered Trademark "Herbagreen" and Heba's Use of "Hebagreen."

Pursuant to 15 U.S.C. § 1114(1)(a), trademark infringement cases are analyzed under a two-part test. "First, [the court] look[s] to see whether plaintiff's mark merits protection, and second, whether defendant's use of a similar mark is likely to cause consumer confusion." (Citation omitted.) Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006).

There is no question that the "Herbagreen" trademark is enforceable and has achieved "incontestable" status.[3] Further, Heba cannot demonstrate that, construing the

---

[3] 15 U.S.C. § 1065 provides in relevant part: "The right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable . . . ." "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right of registration." La Cena Fine Foods, Ltd. v. Jennifer Fine Foods, No. 01-CV-5746 (JLL), 2006 WL 2014503, *7 (D. N.J. July 17, 2006).

In the present case, HerbaSway filed its affidavit, which was accepted by the U.S. Patent and Trademark Office on October 5, 2005. (See Defendants' Exh. 4). Accordingly, the "Herbagreen" trademark is incontestable. "To the extent that the right to use the registered mark has become

facts in favor of HerbaSway, there exists no likelihood of confusion with respect to the Herbagreen and Hebagreen marks. Accordingly, this Court should deny Heba's motion for summary judgment on the trademark infringement count.

> 1.    A proper analysis of likelihood of confusion calls for the comparison of the marks "Herbagreen" and "Hebagreen," not "Herba" and "Heba."

In the present case, Heba's argument as to why no likelihood of confusion exists in the present case improperly focuses entirely on the likelihood of confusion between the terms "Herba" and "Heba." Heba's analysis simply is not in accordance with the precedent of this jurisdiction, as the terms "Herba" and "Heba" constitute only part of the actual marks at issue in this lawsuit-- "Herbagreen" and "Hebagreen."[4]

Case law is clear that "[t]he ultimate conclusion of similarity or dissimilarity of the marks must rest on consideration of the marks *in their entirety*." Packard Press, Inc. v. Hewlett-Packard Co., 227 F.3d 1352, 1358 (Fed. Cir. 2000). "Conflicting composite marks are to be compared by looking at them as a whole, rather than breaking the marks up into their component parts for comparison." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:41 (4th ed. 2006). "A mark should not be dissected or split up into its component parts and each part then compared with

---

incontestable under section 1065 . . . the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b) (1994). Heba has not put forth, nor is it able to, any evidence contesting the validity of the "Herbagreen" mark.

In addition, HerbaSway points out that only "Herbagreen" is a registered trademark entitled to protection, whereas the only registered trademark in Heba's possession is the mark "Heba" *not* "Hebagreen."

[4] In fact, even if the Court were to consider "Herba" and "Heba", Heba's claims would still fail.

corresponding parts of the conflicting mark to determine the likelihood of confusion. It is the impression that the mark as a whole creates on the average reasonably prudent buyer and not the parts thereof, that are important." Id. Because the marks "Herbagreen" and "Hebagreen" are what consumers are comparing, the question of likelihood of consumer confusion must be based on these marks, not their composites.

On occasion, a court may find it useful to examine the parts of the marks' composites to determine which parts are likely to make a greater or lesser impact on the ordinary buyer. Although such an analysis does not violate the anti-dissection rule when it is conducted during a preliminary examination of the marks; Id. § 23:42; the practice does not alter the requirement that in making the ultimate determination regarding likelihood of confusion a court must "look at the general impression created by the marks, keeping in mind all factors which the buying public will likely perceive and remember." W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 573 (2d Cir. 1993).

This holds true regardless of Heba's conjectures regarding the supposed "generic" and/or "descriptive" nature of the terms "Herba" and "green." The cases cited by Heba, Smithkline Beckman Corp. v. Proctor & Gamble Co., 591 F.Supp. 1229 (N.D.N.Y. 1984), and Am. Cyanamid Corp. v. Connaught Labs., Inc., 800 F.2d 306 (2d Cir. 1986), merely stand for the proposition that a finding of trademark infringement cannot rest solely on the use of a common generic or descriptive term. See Macia, III v. Microsoft Corp., 335 F.Supp.2d 507, 520 (D.Vt. 2004).

Both <u>Smithkline Beckman</u> and <u>Am. Cyanamid</u> involved conflicting composite marks where the <u>only</u> similarity between them was a generic term commonly understood by consumers as a specific type of product. <u>Smithkline Beckman</u>, 591 F.Supp. at 1236-37 (examining suffix "RIN" as derivative of word "aspirin," a word having a specific meaning to consumers); <u>Am. Cyanamid</u>, 800 F.2d at 308 (examining term "HIB" as term commonly understood in pharmaceutical world as connoting a product to treat influenza). In each case, the court rightfully concluded that a likelihood of confusion could not be established, since (1) the generic portion of the composite marks clearly indicated its meaning to consumers and (2) the non-generic portions of the competing marks were entirely distinguishable that there was no likelihood of confusion. <u>Smithkline Beckman</u>, 591 F.Supp. at 1238 (considering the prefixes of marks ECOTRIN and ENCAPRIN, "ECOT" and "ENCAP" were so different as to prevent consumer confusion); <u>Am. Cyanamid</u>, 800 F.2d at 308 (no similarity between "VAX" and "IMMUNE" where competing marks were "hibVAX" and "HIB-IMMUNE"); <u>see also</u> <u>Beech-Nut, Inc. v. Warner-Lambert Co.</u>, 346 F.Supp. 547, 549 (S.D.N.Y. 1972) (no similarity between suffixes "PLEASERS" and "SAVERS" in marks "BREATH PLEASERS" and "BREATH SAVERS" to indicate likelihood of confusion). In the present case, in contrast, the composites of the mark "Herbagreen" are <u>not</u> generic, and the terms "Herbagreen" and "Hebagreen" are not dissimilar but differ only by one letter. Accordingly, the likelihood of confusion question in the present case cannot be decided on the same bases as the precedent cited by Heba.

Indeed, in cases more comparable to the facts of the present case, courts in this jurisdiction have followed the so-called "anti-dissection" rule. See Playtex Products, Inc. v. Georgia-Pacific Corp., 390 F.3d 158 (2d Cir. 2004) (court compared composite marks "wet ones" and "moist ones" as a whole when analyzing likelihood of confusion); Banff, Ltd. v. Federated Dept. Stores, Inc., 841 F.2d 486, 489 (2d Cir. 1988) (concluding that proper determination of two marks' similarity involves a comparison of the marks as composites--not as isolated components--despite the fact that the marks consisted of both arbitrary and generic terms); Nabisco v. Warner-Lambert Co., 32 F.Supp.2d 690, 696 -697 (S.D.N.Y. 1999) (ruling that "[a]lthough 'Ice' is the only term in common between Nabisco's 'Ice Breakers' and Warner-Lambert's 'Dentyne Ice,' the court must analyze Nabisco's mark as a composite when determining whether it qualifies for trademark protection."); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 15 F.Supp.2d 389, 395 (S.D.N.Y. 1998) ("fatal flaw" in defendant's argument that registered trademark had little strength was the "undue emphasis" placed on the generic word "Lane" to the exclusion of the other elements of the mark; mark at issue was not "Lane" but "Lane Capital Management").

Accordingly, Heba's arguments in critique of the term "Herba" are completely without basis in law, as analysis regarding likelihood of confusion is properly focused on the actual mark viewed by consumers, "Herbagreen." Because Heba failed to provide **any** legal argument regarding the likelihood of confusion of "Herbagreen" and

"Hebagreen," this court should deny Heba's motion for summary judgment with respect to this count.

2.    There is a substantial likelihood of confusion between the "Herbagreen" and "Hebagreen" marks.

In analyzing whether a likelihood of confusion exists between marks, the courts of the Second Circuit apply the non-exclusive multi-factor test developed by Judge Friendly in Polaroid Corp. v. Polaroid Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers. Louis Vuitton, 454 F.3d at 116-17.

In the present case, the vast majority of the factors enumerated in Polaroid strongly favor a finding of likelihood of confusion between the "Herbagreen" and "Hebagreen" marks. For the purposes of this opposition and in the interests of efficiency, HerbaSway will focus primarily on two of the most prominent factors in the Polaroid analysis.[5]

First, "the similarity of the marks is a key factor in determining likelihood of confusion. . . . To apply this factor, courts must analyze the mark's overall impression

---

[5] It is HerbaSway's position, however, that, at a minimum, the strength of the Herbagreen mark, the similarity of the two marks, the proximity of the products, actual consumer confusion, bridging the gap, and Heba's bad faith all weigh in HerbaSway's favor. For a more detailed analysis of the Polaroid factors as applied to the facts of this case, see, infra, Section D(2)(b) regarding Heba's trade dress infringement.

CARMODY & TORRANCE LLP
{W1482608}ys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
16

on a consumer, considering the context in which the marks are displayed and the "totality of factors that could cause confusion among prospective purchasers." (Citations omitted; internal quotation marks omitted.) Id. at 117. Viewing the "Herbagreen" and "Hebagreen" marks as composites, it is clear that the two marks are virtually indistinguishable in both visually and phonetically. On this basis, Heba's motivation for completely dissecting the trademark "Herbagreen" into "Herba" and "green" becomes evident, for such an analysis is nothing more than a desperate attempt to deemphasize the fact that Heba's mark "Hebagreen" is almost *identical* to HerbaSway's mark "Herbagreen." Where marks are "virtually identical . . . consumer confusion is inevitable." Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F.Supp. 96, 127 (S.D.N.Y. 1989).

The Herbagreen and Hebagreen marks are so similar that it has not been difficult for HerbaSway to uncover direct evidence of actual consumer confusion between the marks. (See Exh. 10). "[T]he Lanham Act seeks to prevent public confusion as to the origin of products, and to prevent a second user who chooses a confusingly similar mark from exploiting the goodwill a first user has created for its trademark." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 745 (2d Cir. 1998). For this reason, "evidence of actual consumer confusion is particularly relevant to a trademark infringement action." Id.

Second Circuit precedent unquestionably recognizes that evidence of actual confusion is a strong indication that a likelihood of confusion exists. See, e.g.,

Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 141 (2d Cir. 1999) ("Evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur."); Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963-64 (2d Cir. 1996); Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 259 (2d Cir. 1987) (citing World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir. 1971), for the proposition that "[w]hile . . . it is not necessary to show actual confusion . . . [t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion."). See also In re Majestic Distilling Co., Inc., 315 F.3d 1311, 1317 (Fed. Cir. 2003) ("A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion."); 4 McCarthy on Trademarks and Unfair Competition § 23:13.

In the present case, HerbaSway has evidence in the form of sworn testimony from HerbaSway customers stating that they were confused by the Hebagreen mark. See Exh. 10. Such evidence clearly demonstrates a likelihood of confusion and is more than sufficient to defeat Heba's Motion for Summary Judgment on HerbaSway's claim of Trademark Infringement. Indeed, "[c]onfusion, whether actual or likely, can take various forms. First, a consumer may buy one product mistakenly thinking it is a different product. [Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc., 486 F.Supp. 414, 428 (S.D.N.Y. 1980).] Second, a consumer may be "confused as to source," and think that a plaintiff company's product is associated with a defendant company. Id.

CARMODY & TORRANCE LLP
{W1482608}    Attorneys at Law
50 Leavenworth Street    18
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Third, a defendant may "gain a foothold in plaintiff's market by exploiting subliminal or conscious association with plaintiff's well-known name." Id. It is not necessary for a plaintiff to present "evidence of mistaken completed transactions." [Morningside Group Ltd., 182 F.3d at 141.] Confusion as to "affiliation, connection, or association[,] . . . damage to good will, or loss of control over reputation," are actionable forms of trademark infringement. Id.; Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204-05 (2d Cir. 1979) [("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.").]" V&S Vin & Spirit Aktiebolag (Publ) v. Absolute Pub. USA Inc., No. 05CIV4429 RMB/RLE, 2005 WL 3272828, *7 -8 (S.D.N.Y. Nov. 28, 2005); see also Sports Auth., 89 F.3d at 963 (stating that courts can properly take into account evidence of "either a diversion of sales, damage to goodwill, or loss of control over reputation."). In light of the direct evidence of multiple instances of confusion between the Herbagreen and Hebagreen products, Heba's argument that no reasonable jury could conclude that there was a likelihood of consumer confusion is simply without merit.[6]

---

[6] In addition, the Herbagreen mark is quite strong. As set forth in footnote 3, supra, the Hebagreen trademark is registered and incontestable. "The strength of a descriptive mark made incontestibl[e] . . . by registration for more than five years is a matter also properly considered by a trial court on the issue of likelihood of confusion." Gurner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993); see also Sports Auth., 89 F.3d at 961. HerbaSway's registration of the Herbagreen mark with the U.S. Patent and Trademark Office makes it presumptively distinctive. See Nabisco v. Warner-Lambert Co., 32 F.Supp.2d 690. Heba's argument regarding the strength of the term "Herba" is legally incorrect because, as discussed, infra, the proper analysis is with respect to the trademark "Herbagreen."

In fact, Heba's motivation for infringing the Herbagreen trademark was for the purpose of acquiring the same customer base that had been purchasing Herbagreen and attempting to mislead them into purchasing Hebagreen instead. The outrageousness of Heba's argument that the Herbagreen mark is weak is highlighted by evidence that Heba representatives, including even Zhou himself, stole customer