"Hebagreen," this court should deny Heba's motion for summary judgment with respect

to this count.

　　2.　　There is a substantial likelihood of confusion between the "Herbagreen" and "Hebagreen" marks.

　　In analyzing whether a likelihood of confusion exists between marks, the courts

of the Second Circuit apply the non-exclusive multi-factor test developed by Judge

Friendly in Polaroid Corp. v. Polaroid Electronics Corp., 287 F.2d 492, 495 (2d Cir.

1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks,

(3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's

bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of

defendant's products, and (8) the sophistication of the consumers. Louis Vuitton, 454

F.3d at 116-17.

　　In the present case, the vast majority of the factors enumerated in Polaroid

strongly favor a finding of likelihood of confusion between the "Herbagreen" and

"Hebagreen" marks. For the purposes of this opposition and in the interests of

efficiency, HerbaSway will focus primarily on two of the most prominent factors in the

Polaroid analysis.[5]

　　First, "the similarity of the marks is a key factor in determining likelihood of

confusion. . . . To apply this factor, courts must analyze the mark's overall impression

---

[5] It is HerbaSway's position, however, that, at a minimum, the strength of the Herbagreen mark, the similarity of the two marks, the proximity of the products, actual consumer confusion, bridging the gap, and Heba's bad faith all weigh in HerbaSway's favor. For a more detailed analysis of the Polaroid factors as applied to the facts of this case, see, infra, Section D(2)(b) regarding Heba's trade dress infringement.

on a consumer, considering the context in which the marks are displayed and the "totality of factors that could cause confusion among prospective purchasers." (Citations omitted; internal quotation marks omitted.) Id. at 117. Viewing the "Herbagreen" and "Hebagreen" marks as composites, it is clear that the two marks are virtually indistinguishable in both visually and phonetically. On this basis, Heba's motivation for completely dissecting the trademark "Herbagreen" into "Herba" and "green" becomes evident, for such an analysis is nothing more than a desperate attempt to deemphasize the fact that Heba's mark "Hebagreen" is almost *identical* to HerbaSway's mark "Herbagreen." Where marks are "virtually identical . . . consumer confusion is inevitable." Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F.Supp. 96, 127 (S.D.N.Y. 1989).

The Herbagreen and Hebagreen marks are so similar that it has not been difficult for HerbaSway to uncover direct evidence of <u>actual</u> consumer confusion between the marks. (See <u>Exh.</u> 10). "[T]he Lanham Act seeks to prevent public confusion as to the origin of products, and to prevent a second user who chooses a confusingly similar mark from exploiting the goodwill a first user has created for its trademark." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 745 (2d Cir. 1998). For this reason, "evidence of actual consumer confusion is particularly relevant to a trademark infringement action." Id.

Second Circuit precedent unquestionably recognizes that evidence of actual confusion is a strong indication that a likelihood of confusion exists. See, e.g.,

Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 141 (2d Cir. 1999) ("Evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur."); Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963-64 (2d Cir. 1996); Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 259 (2d Cir. 1987) (citing World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir. 1971), for the proposition that "[w]hile . . . it is not necessary to show actual confusion . . . [t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion."). See also In re Majestic Distilling Co., Inc., 315 F.3d 1311, 1317 (Fed. Cir. 2003) ("A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion."); 4 McCarthy on Trademarks and Unfair Competition § 23:13.

In the present case, HerbaSway has evidence in the form of sworn testimony from HerbaSway customers stating that they were confused by the Hebagreen mark. See Exh. 10. Such evidence clearly demonstrates a likelihood of confusion and is more than sufficient to defeat Heba's Motion for Summary Judgment on HerbaSway's claim of Trademark Infringement. Indeed, "[c]onfusion, whether actual or likely, can take various forms. First, a consumer may buy one product mistakenly thinking it is a different product. [Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc., 486 F.Supp. 414, 428 (S.D.N.Y. 1980).] Second, a consumer may be "confused as to source," and think that a plaintiff company's product is associated with a defendant company. Id.

Third, a defendant may "gain a foothold in plaintiff's market by exploiting subliminal or conscious association with plaintiff's well-known name." Id. It is not necessary for a plaintiff to present "evidence of mistaken completed transactions." [Morningside Group Ltd., 182 F.3d at 141.] Confusion as to "affiliation, connection, or association[,] . . . damage to good will, or loss of control over reputation," are actionable forms of trademark infringement. Id.; Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204-05 (2d Cir. 1979) [("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.").]" V&S Vin & Spirit Aktiebolag (Publ) v. Absolute Pub. USA Inc., No. 05CIV4429 RMB/RLE, 2005 WL 3272828, *7 -8 (S.D.N.Y. Nov. 28, 2005); see also Sports Auth., 89 F.3d at 963 (stating that courts can properly take into account evidence of "either a diversion of sales, damage to goodwill, or loss of control over reputation."). In light of the direct evidence of multiple instances of confusion between the Herbagreen and Hebagreen products, Heba's argument that no reasonable jury could conclude that there was a likelihood of consumer confusion is simply without merit.[6]

---

[6] In addition, the Herbagreen mark is quite strong. As set forth in footnote 3, supra, the Hebagreen trademark is registered and incontestable. "The strength of a descriptive mark made incontestibl[e] . . . by registration for more than five years is a matter also properly considered by a trial court on the issue of likelihood of confusion." Gurner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993); see also Sports Auth., 89 F.3d at 961. HerbaSway's registration of the Herbagreen mark with the U.S. Patent and Trademark Office makes it presumptively distinctive. See Nabisco v. Warner-Lambert Co., 32 F.Supp.2d 690. Heba's argument regarding the strength of the term "Herba" is legally incorrect because, as discussed, infra, the proper analysis is with respect to the trademark "Herbagreen."

In fact, Heba's motivation for infringing the Herbagreen trademark was for the purpose of acquiring the same customer base that had been purchasing Herbagreen and attempting to mislead them into purchasing Hebagreen instead. The outrageousness of Heba's argument that the Herbagreen mark is weak is highlighted by evidence that Heba representatives, including even Zhou himself, stole customer

**D.    HerbaSway has a Protectable Trade Dress that has been Copied by Heba.**

In its Motion for Summary Judgment, Heba claims that HerbaSway has not adequately described its trade dress and thus is not entitled to trademark protection. As stated below, Heba's argument is without merit.

1.    HerbaSway has adequately defined its trade dress.

Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) provides a cause of action to anyone injured or likely to be injured by another's use of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities[.]" This protection extends both to trademarks and trade dress. See generally Forschner Group, Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 407 (2d Cir. 1997).

> As explained by the Second Circuit:
>
> At one time, "trade dress" referred only to the manner in which a product was "dressed up" to go to market with a label, package, display card, and similar packaging elements. However, "trade dress" has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers. Thus, trade dress is "essentially [a

---

lists from HerbaSway with the intent and affect of misleading HerbaSway customers into purchasing Heba products. (See Exh. 11); see also Mobil Oil, 818 F.2d at 258 -259 (actual constructive knowledge of another company's prior registration of a mark may signal bad faith). Such facts indicate that, contrary to Heba's argument in its motion, the Herbagreen mark is indeed so strong that it became highly desirable to Heba and it is precisely the strength of the "Herbagreen" mark that caused Heba to use a confusingly similar mark for its products.

product's] total image and overall appearance" … "as defined by its overall composition and design, including size, shape, color, texture, and graphics."

Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995)

(citations omitted); see also Tough Traveler, Ltd. v. Outbound Prod, 60 F.3d 964, 967

(2d Cir. 1995), quoting LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 75 (2d Cir.

1985) (alterations in original); Restatement (Third) of Unfair Competition § 16 cmt. a

("The term 'trade dress' is often used to describe the overall appearance or image of

goods . . . as offered for sale in the marketplace.").

In his treatise on trademarks and unfair competition, Professor J. Thomas

McCarthy compares trademark and trade dress protection as follows:

> The emphasis and thrust of a claim of trademark infringement is in deciding whether a discrete symbol, such as a word, number or picture in fact functions as a mark and whether defendant's mark is likely to cause confusion. On the other hand, trade dress protection is generally focused more broadly. To determine trade dress infringement, if the plaintiff has defined the trade dress as the total image or overall impression of plaintiff's product, package and advertising, then it is this composite that is compared with the corresponding image or impression of defendant's product. If defendant's trade dress is likely to cause confusion with plaintiff's trade dress, then a finding of unfair competition is warranted. The ultimate protection desired — prevention of a likelihood of confusion of buyers — is just as important when a junior user presents a package which in toto is confusingly similar to plaintiff's, as when a mere part of the package (such as a word mark) is simulated.

1 McCarthy on Trademarks and Unfair Competition § 8.1 (footnotes omitted).

In the present case, HerbaSway's trade dress consists of the overall appearance of its label which specifically includes the color scheme used, the size and type of lettering used and the shape and placement of words, graphics and decorations. Contrary to Heba's arguments, HerbaSway has adequately described its trade dress.

Moreover, Heba's continued citations to <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101 (2d Cir. 2001), are entirely off base. The plaintiff's definition of its trade dress in <u>Yurman</u> was the "artistic combination of cable [jewelry] with other elements," which combined the subjective term ("artistic") with the vague and undefined "other elements," and thus was so broad as to be meaningless. <u>Id.</u> at 116. By contrast, HerbaSway's definition of its trade dress is specific and does not incorporate any subjective, vague or undefined terms.

The Second Circuit in <u>Fun-Damental Too Ltd. v. Gemmy Indus. Corp.</u>, 111 F.3d 993, 999, (2d Cir. 1997), specifically held that "[t]he concept of trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer." These other elements include "the appearance of labels, wrappers, and containers used in packaging a product as well as displays and other materials used in presenting the product to prospective purchasers." <u>Id.</u> Consequently, Heba's arguments are unveiling and without merit.

2.    <u>HerbaSway's trade dress is inherently distinctive.</u>

To evade the claims of infringement, Heba claims that HerbaSway's trade dress is so vague and indefinite so as not to warrant trademark protection. Despite Heba's contrary urging, HerbaSway's trade dress is inherently distinctive. It has also acquired secondary meaning through substantial marketing expenditures. Additionally, Heba has purposefully copied HerbaSway's trade dress in an attempt to create consumer confusion. As stated below, the undisputed facts demonstrate that there is evidence from which a reasonable jury could find that (i) HerbaSway's trade dress is inherently distinctive and has acquired secondary meaning and (ii) there exists a likelihood of confusion. Accordingly, Heba's Motion should be denied.

Under Section 43(a), a Plaintiff must first demonstrate that its trade dress is protectable because it is either inherently distinctive *or* it has acquired distinctiveness through a secondary meaning. <u>Fun-Damental Too Ltd.</u>, 111 F.3d at 999; <u>Paddington Corp. v. Attiki Importers & Distributors, Inc.</u>, 996 F.2d 577, 582 (2d Cir. 1993). Second, Plaintiff must demonstrate that there is a likelihood of confusion between Defendant's trade dress and Plaintiff's trade dress. <u>Id.</u>

### a) **Distinctiveness of HerbaSway's Trade Dress**

A product's trade dress is its "total image ... including features such as size, shape, color or color combinations, texture, or graphics." <u>Paddington Corp.</u>, 996 F.2d at 582. What is critical for Lanham Act §43(a) analysis is not whether a trade dress has in fact come to identify a specific producer, but whether it is capable of identifying a particular

source of the product.  Id.  Courts often evaluate the inherent distinctiveness of trade dress

according to the test set forth by Judge Friendly in Abercrombie & Fitch Co. v. Hunting

World, Inc., 537 F.2d 4, 11 (2d Cir.1976); see also, Fun-Damental Too Ltd. at 11 F.3d at

1000; Paddington Corp., 996 F.2d at 583.  Under the Abercrombie test, trade dress is

classified as (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful.  Id.

Suggestive and arbitrary and fanciful trade dress are considered to be inherently

distinctive, and will, therefore, always satisfy the first prong of the test for Lanham Act

trade dress protection.  A descriptive trade dress may be found inherently distinctive if the

Plaintiff establishes that its mark has acquired secondary meaning giving it distinctiveness

to the consumer.  Id.  A generic trade dress receives no Lanham Act protection.  Id.

     The Supreme Court has emphasized that an inherently distinctive trade dress is one

whose "intrinsic nature serves to identify a particular source of a product." Two Pesos,

Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992), although it may not yet have

widespread identification among consumers.  Id.  Consumers generally rely on packaging

for information about the product and its source.  Fun-Damental Too Ltd., 11 F.3d at 1000.

The varieties of labels and packaging available to wholesalers and manufacturers are

virtually unlimited.  Id.; see also Paddington Corp., 996 F.2d at 583.  As a consequence, a

product's trade dress typically will be arbitrary or fanciful and will meet the inherently

distinctive requirement for §43(a) protection.  Id.

     The trade dress of HerbaSway's bottles is inherently distinctive.  The tone and

layout of the colors, and the style and size of the lettering, and most important, the overall

appearance of the bottle's labeling, are undeniably arbitrary. (See Exh. 8)  They were selected from an almost limitless supply of patterns, colors and designs.  (See Exh. 2 at 8). As stated in the Declaration of Rhode van Gessel, the graphic designer hired by HerbaSway to design its product labels, the majority of Herbal homeopathic products on the market at the time HerbaSway sought to introduce its products had labels that were floral in appearance. (See id. at 6).  To differentiate HerbaSway's products, Ms. van Gessel designed a label that was medicinal in appearance.  (See id. at 9).  In so doing, HerbaSway's trade dress was unique.  HerbaSway's unique label was readily distinguishable from competitor's products and served to identify a single source of the product.  Accordingly, HerbaSway's trade dress is arbitrary, and therefore inherently distinctive.  The trade dress of HerbaSway's bottles is thus entitled to protection under the Lanham Act.

Even if not inherently distinctive, HerbaSway's trade dress has certainly acquired distinctiveness through "secondary meaning."  A product's trade dress has acquired "secondary meaning" when "the purchasing public has come to associate [its constituent] words, symbols, collocations of colors and designs, or other advertising materials . . . with goods from a single source." Basch v. Blue Coral, Inc., 968 F.2d 1532, 1536 (2d Cir. 1992).  The "second" in "secondary meaning" signifies the fact that, with time and market exposure, a particular trade dress may come "to identify not only the goods but the source of the goods." Id.

In ascertaining whether a trade dress has acquired secondary meaning, courts may consider such factors as: (1) Plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) purposeful plagiarism of the trade dress; and (6) the length and exclusivity of the use. Id. "[N]o single factor is determinative, and every element need not be proved." Thompson Medical Co., Inc. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985).

In the instant matter, the trade dress of HerbaSway's bottles has acquired secondary meaning. HerbaSway first began manufacturing, promoting, distributing and selling its products with the labels at issue since 1996. (See Exh. 1 at 18). The distinctive trade dress of HerbaSway's bottles has, therefore, been continuously and exclusively employed and advertised by HerbaSway. The Plaintiff has expended in excess of $6 million in advertising and marketing of its products since 1996. Id. The Plaintiff's trade dress has certainly acquired distinctiveness through secondary meaning.

Perhaps the best evidence of this fact is the absolute, purposeful plagiarism of the trade dress by Heba. The trade dresses are virtually identical. (Compare Exh. 8 with Exh. 9). Heba had limitless options in designing its labels, yet it chose to copy the design and overall look of HerbaSway's labels. There can be little doubt that Heba is attempting to take advantage of the goodwill associated with HerbaSway's trade dress. HerbaSway's trade dress has, therefore, acquired distinctiveness, which entitles it to protection under the Lanham Act.

### b) Likelihood of Confusion

Under §1125, the analysis and determination of the likelihood of confusion is identical to that under §1114. Under both Sections of the Lanham Act, the analysis of likelihood of confusion is guided by the eight <u>Polaroid</u> factors discussed in Section IV.A.1(a) of this Memorandum of Law. An application of those factors is discussed below.

(1)    Strength of the Trade Dress

HerbaSway's trade dress is clearly arbitrary and fanciful and therefore is a strong mark. <u>Paddington Corp.</u>, 996 F.2d at 585.

(2)    Similarity of the Trade Dresses and Products' Proximity

HerbaSway's and Heba's trade dress are very similar. The dresses of the two bottles bear substantial similarities, both in their details and their overall appearance. Both bottles have labels that consist of a pale yellow background, inside of which is lettering in purple and green. Both use similar lettering style and have the same overall layout, with wording and marks placed in parallel positions. Both use almost identical descriptions of the product. The differences between the bottles are minimal and likely indistinguishable to even a discriminating consumer.

"More significant than the striking similarities in various details are the dresses' similarity in overall appearance." <u>Paddington Corp.</u>, 996 F.2d at 586. Each label's lettering style, layout, and coloration, taken together, convey the same impression: a design

that is simple and clean and medicinal in appearance. The marked similarity between the two bottles will certainly create confusion among the purchasing public.

> (3)    Competitive Proximity of the Two Products and Likelihood Senior User Will Bridge the Gap

Both HerbaSway's products and Heba's products are nearly identical and compete in the same market. Accordingly, because the two products are similar and compete for the same market, this factor also favors HerbaSway.

> (4)    Junior User's Bad Faith

"Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." Paddington Corp., 996 F.2d at 586-87. In determining a defendant's intent, "actual or constructive knowledge" of prior user's mark or dress may indicate bad faith. Id. The Second Circuit has upheld findings of bad faith where prior knowledge of the use of the trade dress "is accompanied by similarities so strong that it seems plain that deliberate copying has occurred." Id.

Zhou, as a former employee of HerbaSway, was of course intimately familiar with HerbaSway's trade dress. The similarities between the bottle dresses are so striking that it is hard to imagine that Heba five years later could have come up with the dress *without intentional copying.* Paddington Corp., 996 F.2d at 587. "Where the copier references the prior dress in establishing [its] design with the apparent aim of securing the customers of the other based on confusion, intentional copying may be found." Id. Moreover, the testimony given by Calvin Liu, Heba's label designer, only

makes more clear that Heba blatantly copied HerbaSway's trade dress. Mr. Liu told the unbelievable story that without ever having seen HerbaSway's labels and without being given anything from Heba other than the size of the label, the bird logo and the hand written text, he miraculously designed a label that was strikingly similar to HerbaSway's trade dress. (See Exh. 17 at 12-27). All the evidence presented demonstrates Heba's bad faith in intentionally copying HerbaSway's trade dress.

(5)     Evidence of Actual Confusion.

As stated above, evidence of actual confusion is a strong indication that a likelihood of confusion exists. See, e.g., Morningside Group Ltd., 182 F.3d at 141. In the present case, HerbaSway's evidence of actual customer confusion clearly demonstrates a likelihood of confusion and is more than sufficient to defeat the Heba's Motion for Summary Judgment.

(6)     Quality of Junior User's Product.

The seventh Polaroid factor is the quality of the junior user's product. Where the quality of the junior user's product is equal to that of the senior user, then there is an increased tendency of creating consumer confusion. See Banff Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486, 492 (2d Cir. 1988). In the instant matter, Heba claims that its products are "new and improved," however this bald claim is unsubstantiated and the products are at best of similar quality. Where the products are similar in quality, there is an increased likelihood of consumer confusion.

       (7)     <u>Sophistication of Consumer</u>.

The final Polaroid factor, the sophistication of the consumer, is grounded in the belief that lack of consumer sophistication increases the likelihood of confusion. <u>See Centaur Communications Ltd. v. A/S/M Communications, Inc.</u>, 830 F.2d 1217, 1228 (2d Cir. 1987). This is particularly true where the marks are similar, the products are relatively inexpensive and the products are in competitive proximity. <u>Hasbro, Inc. v. Lanard Toys, Ltd.</u>, 858 F.2d 70, 79 (2d Cir. 1988). HerbaSway's product sells for $24.95; the similar Heba product also sells for $24.95.

       (8)     <u>Summary of Polaroid Factors</u>

The similarity of the trade dress, the proximity of the markets, Heba's bad faith, evidence of actual customer confusion, the product price and the relative lack of consumer sophistication, all support a finding that there is a strong likelihood of buyer confusion, satisfying the <u>Polaroid</u> factors.

    **E.**    **An Issue of Fact Exists as to Whether the Copyright Registration of HerbaSway's Educational Brochure, Registered in HerbaSway's Name, is the Property of HerbaSway.**

       1.     <u>Heba's argument regarding the question of copyright infringement is completely without merit and is entitled to little weight.</u>

At the outset, it is necessary to draw the courts attention to the egregiousness of Heba's argument that summary judgment should be granted in its favor on the copyright infringement count, in light of the overwhelming evidence that Zhou, on behalf of Heba, deliberately and maliciously copied HerbaSway's brochure for a variety of

{W1688834}  CARMODY & TORRANCE LLP    50 Leavenworth Street  30
            Attorneys at Law        Post Office Box 1110
                             Waterbury, CT 06721-1110
                             Telephone: 203 573-1200

unlawful purposes, including infringing on HerbaSway's trademark and stealing HerbaSway's products and customers. A side-to-side comparison of the HerbaSway brochure and the Heba Brochure compels any rational-minded person to conclude that, due to their numerous similarities, one had to have been copied from the other. (Compare Exh. 5 with Exh. 6)

In the deposition of Calvin Liu, the individual who printed Heba's brochures, Liu states that the concept and design of the brochure was created by a woman named "Miss Lin," who was living in Flushing, New York, at the time she created the brochure, but who now is unreachable at an unknown location in Taiwan. (See Exh. 17 at 47-59). According to Liu, "Miss Lin" was hired by him for a "one time deal" to create Heba's brochure, and then no one ever heard from her again. (Id. at 48-49). Liu denied having had any role in the concept and design of Heba's brochure, and testified that, without any direction from Zhou and without viewing the HerbaSway brochure "Miss Lin" coincidentally created a brochure for Heba that was strikingly similar to that of HerbaSway's. (Id. at 47-59.) The testimony of Calvin Liu and his explanation as to how Heba came to have an educational brochure so similar to HerbaSway's brochure is totally unbelievable, particularly in light of Zhou's connection with both companies and Liu's complete lack of details and records to support his testimony.

As will be discussed, Heba claims that HerbaSway does not have ownership rights in the copyright at issue is so absurd that the only conclusion to draw from such an argument is that is attempting to divert the Court's attention from the tremendous

amount of evidence implicating it in a scheme to infringe on HerbaSway's lawful rights, including but not limited to its rights in the copyright to its educational brochure.

In addition, any testimony by Zhou on which Heba relies in support of its argument is entitled to no weight by this Court. In a related action between the parties in the Connecticut Superior Court, the Honorable Judge Peck recently issued an Order For Sanctions against Zhou and Heba Labs based on the court's finding that Zhou's testimony in depositions and hearings before the court had been **"inconsistent and deceitful in disrespect of his repeated affirmation to tell the truth**." HerbaSway Labs., Inc. v. Zhou, et al., Superior Court, Judicial District of Hartford, Complex Litigation Docket, No. X03-CV-01-4022119-S (*Peck, J.*, Order re: HerbaSway Laboratories, LLC's Motion For Sanctions, December 18, 2006). See Exh. 3). The court, in ordering the sanctions, also credited HerbaSway's claim that Zhou has "obstructed the process of this litigation, destroyed or tampered with evidence and interfered with the truthful testimony of his wife, Wendy Zhou." (Id.)

On this basis alone, the Court should deny Heba's Motion for Summary Judgment with respect to HerbaSway's claim of copyright infringement because the only facts relied upon by Heba in support of its claim are dependent on the testimony of Dr. Zhou, which should be afforded absolutely no weight in the Court's analysis. The lack of credibility of Zhou's testimony at least creates a question of fact regarding the employment relationship between he and HerbaSway.

2.    HerbaSway, as Dr. Zhou's employer, is the rightful owner of the rights to the copyright on HerbaSway's educational brochure.

Pursuant to 17 U.S.C. § 501(b), the legal owner of an exclusive right under a copyright is entitled to institute an action for any infringement of that particular right committed while he or she is the owner of it. HerbaSway is the owner of the copyright on the educational brochure regarding HerbaSway products. (See Defendants' Exh. 28.) Accordingly, HerbaSway has standing to bring an action for copyright infringement against Heba for the intentional, malicious, and illegal appropriation of the HerbaSway copyright.

First and foremost, HerbaSway is entitled to a statutory presumption of the validity of the facts stated in its copyright registration. 17 U.S.C. § 410(c) (1994).[7] HerbaSway's copyright registration states that HerbaSway is the author of the educational brochure. Accordingly, HerbaSway is entitled to a presumption that it is the rightful owner of the copyright on the educational brochure. The statutory presumption is by no means irrebuttable, but it does order the burden of proof. See Langman Fabrics, Inc. v. Graff Californiawear, Inc., 160 F.3d 106, 111 (2d Cir. 1998). Therefore, Heba bears the burden of going forward with proof that HerbaSway was not the author of the brochure. Id.

---

[7] 17 U.S.C. § 410(c) provides: "(a) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

Regardless of this presumption, however, it is clear that HerbaSway, as the employer of Zhou at the time the brochure in question was created, is the owner of any contribution made to the brochure by Zhou. The Copyright Act of 1976 provides that if a copyrightable work is made for hire, the employer for whom the work was prepared is considered the author and owns the copyright, unless the parties have expressly agreed otherwise in writing. 17 U.S.C. § 201(b); see also Langman Fabrics, Inc. v. Graff Californiawear, Inc., 160 F.3d 106, 110 (2d Cir. 1998). A work prepared by an employee within the scope of his or her employment is a work "made for hire" under the Act. 17 U.S.C.A. § 101. The rationale behind this "work for hire" doctrine is that when an employer hires an employee to create a copyrightable work, the fruits of the employee's endeavors properly belong to the employer. Carter v. Helmsley-Spear, Inc., 861 F.Supp. 303 (S.D.N.Y. 1994), aff'd in part and rev'd in part on other grounds, vacated, 71 F.3d 77 (2d Cir. 1995), cert. denied, 517 U.S. 1208 (1996).

As evidenced by the Declaration of Rhode van Gessel, attached as Exhibit 2, van Gessel, Phil Clemens, Franklin St. John, Lorraine St. John and Dr. Zhou all contributed their efforts to creating HerbaSway's brochure. (See Exh. 2 at 11-14) Ms. van Gessel and Clemens understood that they were hired for the purpose of assisting HerbaSway, and that their contract was one "for hire." (Id. at 10-15) Regardless of the status of van Gessel and Clemens with respect to HerbaSway's copyright, however, the only pertinent question with respect to this lawsuit is Zhou's status with respect to the copyright.

As the Copyright Act does not define the term "employee," courts look to principles of common law agency in determining whether an individual is an employee under the Act. Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989). In Reid, the United States Supreme Court set forth a multi-factor test for analyzing whether a work was produced "for hire" by an employee:

> [T]he hiring party's right to control the manner and means by which the product is accomplished . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751-52. While all of these factors are relevant, no single factor is determinative. Id. at 752. "Instead, the factors are weighed by referring to the facts of a given case." Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 85 (2d Cir. 1995). In fact, five of the Reid factors have been held by this Circuit to be of particular importance and will almost always be significant:  (1) the hiring party's right to control the manner and means of creation; (2) the skill required [of the hired person]; (3) the provision of employee benefits; (4) the tax treatment of the hired party; (5) whether the hiring party has the right to assign additional projects to the hired party. Id. (quoting Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992)).

From 1996 to February 1, 2001, Zhou was employed at HerbaSway as the company's Vice President of Marketing and Research & Development. (See Exh. 1 at

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

9.)  As compensation for his services, Zhou received guaranteed payments until his termination on February 1, 2001.  (Id.)  In this employment position, Zhou's responsibilities included, inter alia, formulating and manufacturing HerbaSway products and assisting in the creation and design of brochures advertising HerbaSway's products. (Id. at 1-2.)  Based on these factors, Dr. Zhou without question was an employee of HerbaSway at the time he participated in the drafting of HerbaSway's educational brochure.  Importantly, Heba does not dispute that HerbaSway paid for all costs associated with the development and copyright of the brochure, coordinated the hiring of van Gessel and Clement, and conducted much of the work on HerbaSway's premises. Because the facts of the present case, viewed in the light most favorable to HerbaSway, indicate that Zhou was an employee of HerbaSway at the time the brochure was created, ownership of the copyright vests in HerbaSway, not Zhou, and therefore HerbaSway has standing to bring an action against Heba for copyright infringement.

Heba's argument as to why Zhou cannot be considered an employee is unpersuasive.  For example, Heba points to the fact that Zhou was given a both responsibility and discretion in determining the contents and design of the brochure, yet such a factor does not support a finding that he was not an employee.  As stated in Martha Graham School & Dance Foundation, Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 380 F.3d 624, 642 (2d Cir. 2004): "The Restatement (Second) of Agency notes that there are many occupations in which the employer would not normally exercise control over the details of the employee's work.  The 'control or

right to control needed to establish the relation of master and servant may be very attenuated.' Restatement (Second) of Agency § 220(1) cmt. d (1958)." In Martha Graham, the Second Circuit concluded that a choreographer's participation in choreographing certain dances for a dance company constituted "work for hire," regardless of the fact that she was given a substantial degree of control over the productions, because the company's unwillingness to exercise control was due to its understanding that she was bringing a certain expertise to the task. Id. The same rationale applies to the context of this case, where Zhou, an expert in the field of Chinese herbs, was given discretion to draft the language describing HerbaSway's herb-based products.

The present case also is comparable to the case of Carter v. Helmsley-Spear, Inc., 71 F.3d 77 (2d Cir. 1995), cert. denied, 517 U.S. 1208 (1996). In Carter, where a group of artists were hired to design, create and install a sculpture in the lobby of a commercial building, the Second Circuit reversed the District Court's finding that the sculpture was an independently contracted-for work rather than a work for hire, and held that ownership of the sculpture lay in the hiring party. As the basis for its decision, the court stressed that the hiring party had provided the artists with tools, required that they work on the pieces for a minimum number of hours weekly, paid the artists via a weekly check, paid some of the artists' assistants, provided the artists with some health insurance benefits for a portion of the time they worked, and withheld taxes.

Zhou was an employee of HerbaSway and, therefore, his contribution to the brochure did not create ownership in anyone but the corporation. At a *minimum*, a substantial question of fact exists in this regard, particularly in light of HerbaSway's entitlement to a presumption that it is the rightful owner of its own copyright. Accordingly, Heba's Motion for Summary Judgment must be denied as to the copyright count.

## IV.    CONCLUSION

For all of the forgoing reasons, Heba's Motion for Summary Judgment should be denied.

THE PLAINTIFF,
HERBASWAY LABORATORIES, LLC

BY _____

JOHN R. HORVACK, JR.
Federal Bar No. ct12926
FATIMA LAHNIN
Federal Bar No. ct24096
Carmody & Torrance LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
Phone: 203 573-1200
Fax: 203 575-2600
Email: jhorvack@carmodylaw.com
        flahnin@carmodylaw.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent overnight mail,

postage prepaid, on January 15, 2007, to:

Alexandra B. Stevens
McCarter & English, LLP
Financial Centre, Suite A304
695 East Main Street
Stamford, CT 06901-2138
203-399-5900

Mark D. Giarratana
McCarter & English, LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103
203-275-6700

Krista Dotson, Esq.
Sheila J. Hanley, Esq.
Lawrence C. Sgrignari, Esq.
Gesmonde, Pietrosimone & Sgrignari, LLC
3127 Whitney Avenue
Hamden, CT 06518
203-407-4200

Fatima Lahnin